## Samuel Ecker *vs.* Scott W. McAllister.

*Regularity of the opening of a Commission, return, &c.; Its admissibility in Evidence—Bill of exception inadmissible to prove statement of Witness—Proper mode of proving the Statements of a Witness—Insufficient evidence of a Creditor's knowledge of the Insolvency of his Debtor—Creditor who has not the legal right to institute proceedings in Bankruptcy against his Debtor—Insufficient consideration to support a Promise to pay the Debt of a third party—Acts prima facie evidence of Fraud under the Bankrupt Act— Onus of Proof.*

It appeared that a commission to take testimony, the return, and the evidence, enclosed in an envelope, addressed to "Clerk of Frederick County Circuit Court, Frederick, Md.," was received at the said clerk's office, on the 3rd of December, 1875; and it was proved that when a paper was received at said office, directed to the clerk, it was opened by the clerk or one of his deputies; that neither the clerk, nor any of the deputies recollected who opened this particular commission, but that the endorsement on the envelope, "Filed Dec'r 3rd, '75," and on the commission, "Ret. and filed Dec. 3rd, '75," was in the hand-writing of the chief deputy in the office; and that said commission, return and evidence had been in the clerk's office ever since their return. It further appeared that there was no rule of Court requiring the clerk to open such commissions, and that the Judge did not open it, and would not have opened it, had it been presented to him, as it was addressed to the clerk. Upon objection to the admissibility of this commission in evidence upon the ground that it was not opened by the Judge or by his special order, it was Held:

That it might fairly be presumed that the commission was opened either by the clerk or one of the deputies in his office; and the clerk being the hand of the Court in the transaction of its business, a commission thus opened, was, in contemplation of law, opened by the Court or Judge.

A bill of exception purporting to contain the testimony of a witness given on the former trial of a case, is not admissible in evidence

Ecker *vs.* McAllister.

to contradict the testimony of such witness given on a second trial of the same case.

The only proper mode of proving what a witness orally stated on a former trial, is to examine persons who heard his evidence.

The fact that within a week after the execution of an assignment and bill of sale from a debtor to his creditor, proceedings in bankruptcy were instituted against both, is not admissible to show that the creditor at the date of the acceptance of such assignment and bill of sale knew that his debtor was insolvent.

A creditor who, with knowledge or reasonable cause to believe, that his debtor is insolvent, accepts from him an assignment of certain book accounts, and a bill of sale of his personal property, to secure the amount due, has not the legal right to institute proceedings in bankruptcy against such debtor.

A promise by a creditor to forbear the institution of proceedings in bankruptcy against his debtor, is not a sufficient consideration to support a promise by a third party to pay the debt, though the creditor believed that he could have sustained the proceedings in bankruptcy, and the third party believed that forbearance to proceed would be advantageous and beneficial to himself.

In an action to recover a sum of money due by B. to the plaintiff, which it was alleged, the defendant had promised to pay to the plaintiff in consideration that he would abstain from instituting proceedings in bankruptcy against B., it was shown that B. and the plaintiff had been carrying on the milling business in partnership, and that they stopped business on the 1st of November, 1869, and had a settlement, and that·on the 10th of the same month B. assigned all his book accounts, and gave a bill of sale of all his personal property to the plaintiff, and on the same day conveyed all his estate in land to the defendant, thus stripping himself of all the property he had, and leaving himself with only twenty dollars in money, and other debts unpaid and unprovided for. HELD:

1st. That these transactions were not in the usual and ordinary course of B's business, and were, therefore, under section 35, of the Bankrupt Act *prima facie* evidence of fraud, of which the plaintiff was bound to take notice; and the assignment and bill of sale to·himself, were, under the circumstances, sufficient to put him upon inquiry.

2nd. That the *onus* was cast upon the plaintiff to prove that the assignment and bill of sale received by him under such circum-

stances, were received without knowledge, or reasonable cause to believe, that B. was then insolvent or in contemplation of insolvency.

APPEAL from the Circuit Court for Frederick County.

For a statement of the nature of this case reference may be had to the same case in 45 *Md.*, 290.

At the trial the plaintiff took one exception, viz., to the ruling of the Court (LYNCH, J.,) in rejecting certain of his prayers and in granting certain of those of the defendant.

The defendant took six exceptions. The *first, second* and *third* exceptions are stated in the opinion of the Court. The *fourth* and *fifth* exceptions were abandoned at the argument of the case.

*Defendant's Sixth Exception.*—The plaintiff offered eleven prayers, the first and seventh of which only, as follows, need be inserted:

1. That if the jury shall believe from all the evidence, that one Jacob S. Bohn, on the 10th day of November, 1869, conveyed all his interest in his real estate to the defendant, and that by such conveyance he deprived himself of the means wherewith to pay all his debts, or that he was at the time of such conveyance, insolvent, and that the said Jacob S. Bohn was at the time of such conveyance, indebted to an amount exceeding three hundred dollars, and that at the time of such conveyance to the defendant, the said Jacob S. Bohn was indebted to the plaintiff in an amount exceeding two hundred and fifty dollars, and that subsequently to the said conveyance to the defendant, and within four months thereof, the plaintiff threatened to institute proceedings in bankruptcy, to have said Jacob S. Bohn declared a bankrupt under the laws of the United States, and the defendant agreed and promised the plaintiff that if the plaintiff would forbear and refrain from instituting such proceedings in bankruptcy, that he, the defendant, would pay to the plaintiff

the amount of said Jacob S. Bohn's indebtedness to him, and that the said plaintiff relying upon the said agreement and promise of the defendant, did forbear and refrain from instituting such proceedings in bankruptcy, that then the plaintiff is entitled to recover the amount the jury shall find the said Jacob S..Bohn was, at the time of said agreement and promise of the defendant, (if the jury shall find such agreement and promise,) indebted to the plaintiff. Although the jury shall further find, that on the said 10th day of November, 1869, the plaintiff received from said Jacob S. Bohn, an assignment of his book accounts, in part payment of said Jacob S. Bohn's indebtedness to him, and also on the same day received from said Jacob S. Bohn, a bill of sale of personal property, as security for or on account of such indebtedness, unless the jury shall further find that at the time of such assignment and bill of sale, the plaintiff knew or had reasonable cause to believe that said Jacob S. Bohn was insolvent, and that the burden of proving such knowledge or reasonable cause to believe on the part of the plaintiff, is on the defendant.

7. That the promise to forbear proceedings at law, is a sufficient valid consideration to support the promise to pay, whether the proceedings could have been successfully prosecuted or not, if the jury shall believe that the plaintiff *bona fide* believed he could have sustained said proceedings, and the defendant believed the non-prosecution of the same would be beneficial and advantageous to him.

The defendant offered twelve prayers, of which the following will suffice to be inserted:

4. That to enable the plaintiff to recover in this action under the pleadings and evidence, he must prove to the satisfaction of the jury that he had a claim against the witness, Jacob S. Bohn, provable under the Bankrupt Law of the United States, and that the said Jacob S. Bohn with intent to commit an act of bankruptcy, conveyed and

transferred the real estate of which he was possessed, to the defendant, and became thereby insolvent, and unable to pay his debts, (if the jury shall find that he owed other debts,) and that within four months after said conveyance and transfer, the said plaintiff was about to institute proceedings in the District Court of the United States for the District of Maryland, under and in pursuance of the Bankrupt Act, to have the said Jacob S. Bohn adjudicated and declared a bankrupt, and that the defendant within that time promised and undertook to pay to the plaintiff the indebtedness of the said Bohn to the plaintiff, and that the plaintiff, in consideration of said promise, agreed to forbear and desist from instituting said proceedings in bankruptcy; but that if the jury shall find that at or before the time of the said alleged promise on the part of the defendant to pay the claim due by said Bohn to plaintiff, and that subseqnent to said conveyance of said real estate, the plaintiff had received and accepted from said Bohn a bill of sale conveying all the personal property of the said Bohn to the plaintiff, and an assignment of all his, the said Bohn's interest, in certain book accounts mentioned in evidence, that then the plaintiff had received by said bill of sale and assignment an unlawful preference, and under the Bankrupt Law of the United States as then in force, the said plaintiff could not have proved the said debt and have filed a petition in involuntary bankruptcy against the said Jacob S. Bohn, unless the plaintiff has established to the satisfaction of the jury by the evidence in the cause, that at the time of so receiving and accepting such preference, he had not reasonable cause to believe that the said Bohn was insolvent, or that a fraud on the Bankrupt Act was intended, and the onus is on the plaintiff to establish these facts to the satisfaction of the jury.

5. That if the jury shall find under the pleadings and evinence that the witness, Jacob S. Bohn, and the plain-

tiff, were in partnership in the milling business from April, 1868, to November 1st, 1869, and then dissolved and settled the accounts between them, and that upon such settlement the said Bohn became and was indebted to the plaintiff in the sum of $1300, and for the purpose of securing said indebtedness the said Bohn executed and delivered to the said plaintiff the bill of sale and assignment offered in evidence, and that the said Bohn was at the same time indebted to other persons in several sums of money, and upon the execution of said assignment and bill of sale, became insolvent, and unable to pay his creditors, and that the plaintiff accepted and received said assignment and bill of sale, and at the time of so doing knew of said indebtedness of said Bohn to said other creditors, and that said bill of sale and assignment were not executed in the ordinary course of business, that then the said plaintiff had reasonable cause to believe that said Bohn executed said bill of sale and assignment in contemplation of insolvency.

6. That if the jury shall find under the pleadings and evidence, that Jacob S. Bohn conveyed all his real estate to the defendant, and thereafter on the same day assigned all his book accounts and evidences of debt, and transferred all his personal property by bill of sale to the plaintiff, and that thereafter the said Bohn was without property, and had but twenty dollars left, and that said Bohn owed several creditors sundry sums of money, and that plaintiff was aware of such indebtedness or part thereof, that then there was apparent indication, at the time of the making of said assignment and bill of sale, that insolvency on the part of said Bohn was a probable and an approaching event, and that then the plaintiff had reasonable cause to believe that Bohn, at the time of making said bill of sale and assignment, was acting in contemplation of insolvency.

7. That if the jury shall find from the evidence that the witness, Jacob S. Bohn, executed on the 10th of November, 1869, the bill of sale and assignment to the plaintiff, and offered in evidence in this cause, to secure an indebtedness from the said Bohn to the plaintiff, contracted and due before the said execution of said bill of sale and assignment; and shall further find from the evidence that said Jacob S. Bohn was, at the time of the said execution of said bill of sale and assignment, insolvent, or upon the execution thereof became insolvent; and shall further find from the evidence that the execution and delivery of said bill of sale and assignment was not in the usual course of business between the said witness and said plaintiff, that then such conveyance and assignment is sufficient evidence, if uncontrolled by other evidence in the cause, to establish a knowledge or reasonable cause to believe on the part of the plaintiff that the witness, Bohn, was insolvent at the time of making said bill of sale and assignment, or that the same were made by said Bohn in contemplation of bankruptcy or insolvency.

8. That if the jury shall find from the evidence that said Bohn conveyed his real estate to the defendant, and his personal property and book accounts to the plaintiff, and that the plaintiff threatened to institute proceedings in bankruptcy against said Bohn within six months after said conveyances, and that the defendant promised, in consideration of the plaintiff forbearing to institute said proceedings, to pay to the plaintiff the said debt alleged to be due him by the said Bohn, that then the verdict of the jury must be for the defendant, unless the jury shall find from the evidence that the said plaintiff had, at the time of making the said promise to forbear proceedings in bankruptcy, a claim against said Bohn, which was provable under the Bankrupt Act, and that a claim to be provable under the Bankrupt Act, must have been one for at least $250, and that the plaintiff must not have accepted

or reserved a preference or security therefor, from the said Bohn, with reasonable cause to believe that the said Bohn was insolvent, and that the burthen of proving that plaintiff had such provable claim, and that he did not accept or receive a preference or security therefor from said Bohn, with reasonable cause to believe that the said Bohn was insolvent, is on the plaintiff.

The Court granted the first, seventh and eighth prayers of the plaintiff, and rejected his other prayers; and granted the first, second, third, ninth, tenth and twelfth prayers of the defendant, and rejected his other prayers. To the granting of the plaintiff's prayers and the rejecting of his prayers, the defendant excepted. The verdict and judgment were for the plaintiff, and the defendant appealed.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ALVEY, ROBINSON and IRVING, J.

*James McSherry,* for the appellant.

*William P. Maulsby, Jr.,* for the appellee.

GRASON, J., delivered the opinion of the Court.

This case was before this Court at the April term, 1876, when the judgment was reversed and a new trial awarded. See 45 *Md.,* 290. It was again tried in the Circuit Court for Frederick County, and, the judgment being for the plaintiff, the defendant has again appealed.

The first exception of the defendant is taken to the ruling of the Circuit Court in refusing to permit to be introduced the evidence of Jacob S. Bohn, taken and returned under a commission to James W. Collins, of Pennsylvania, for the purpose of contradicting said Jacob S. Bohn, who was orally examined as a witness for the appellee at the second trial of this case. The commission and the evidence of Bohn taken under it were objected to

generally, and also on the ground that the commission had been improperly opened. The first part of the objection goes to the admissibility of the commission, return and evidence taken under it, on the alleged ground that they were not inclosed in an envelope under the hand and seal of the Commissioner, and addressed to the Judges of the Court. This is no longer an open question, as upon the former appeal this Court decided that the return to the commission was under the hand and seal of the Commissioner and was, in all respects, formal and regular. This point having been so decided on the former trial, that decision is the law of this case, and we have seen no reason to doubt its correctness.

It appears that the commission, return and evidence were enclosed in an envelope, addressed to "Clerk of Frederick County Circuit Court, Frederick, Md.;" that it was received at the said Clerk's office on the third day of December, 1875, and it was proved that when a paper is received at said office, directed to the Clerk, it is opened by the Clerk or one of the deputies; that neither the Clerk nor any of the deputies recollected who opened this particular commission, but that the endorsement on the envelope, "Filed Dec'r 3rd, 1875," and on the commission, "Ret. and filed Dec. 3rd, '75," is in the hand-writing of Adolphus Fearhake, chief deputy in the said Clerk's office, and that said commission, return and evidence have been in the Clerk's office ever since their return. It further appears that there is no rule of Court directing the Clerk to open such commissions, and that the Judge gave no special order to the Clerk to open this commission; and that the Judge did not open it, and would not have opened it, if it had been presented to him, as it was directed to the Clerk and not to the Judges of the Court.

These facts did not appear upon the former appeal, but even if they had, we should have held that the commission had been properly opened. Adolphus Fearhake swears

that the commission came to the Clerk's office in an envelope closed with mucilage, as envelopes usually are, and with a postmark upon it, and that it has been in the custody of the Clerk ever since its return. There is not any evidence whatever that the commission was ever changed, or tampered with in any manner from the time it left the hands of the Commissioner till the time when the offer was made to introduce it in evidence in this case. There is not an intimation of its having been altered or tampered with. The objection to its admissibility rests solely upon the naked technical ground that it was not opened by the Judge or by his special order. We think it may be fairly presumed from the evidence in the record that this commission was opened either by the Clerk or one of the deputies in the office of the Clerk, and the Clerk being the organ and hand of the Court in the transaction of its business, a commission thus opened is, in contemplation of law, opened by the Court or Judge.

The Circuit Court erred, therefore, in refusing to permit the evidence of Bohn to be read to the jury for the purpose of contradicting and impeaching him.

After further evidence given for the plaintiff by said Bohn and himself, the defendant, for the purpose of contradicting said Bohn and the plaintiff, offered to prove, by offering in evidence the defendant's first bill of exceptions, taken at the former trial of this case, what each of said witnesses had sworn to upon said former trial.

To its admissibility the plaintiff objected, and the Court refused to permit it to be read to the jury, and the defendant excepted. This paper was neither written nor signed by the witnesses, whose testimony it purported to contain; was prepared by counsel for the purpose of basing upon it a legal proposition to be decided by this Court, and, for aught we know, may have contained but a part of the testimony given. The only proper mode of proving what a witness orally testified to on a former trial is to examine

witnesses for that purpose who heard his evidence given. We think the Court was clearly right in rejecting the proof offered.

The evidence offered in the third exception was clearly inadmissible. The offer was to prove by Maynard that he had instituted proceedings in bankruptcy against Bohn and the plaintiff, about the 17th day of November, 1869, for the purpose of showing, in connection with the other evidence in the cause, that the plaintiff knew that Bohn was insolvent when the former accepted a bill of sale and an assignment from the latter on the 10th day of November, 1869. Evidence of the plaintiff's knowledge of Bohn's insolvency, after the date of the bill of sale and assignment could not affect those transactions. To be admissible it must relate to such knowledge antecedent to or at the date of those papers.

The fourth and fifth exceptions were abandoned at the argument of the cause.

The sixth exception was taken to the granting of the plaintiff's first, seventh and eighth prayers, and to the rejection of the fourth, fifth, sixth, seventh, eighth and eleventh prayers of the defendant.

The appellee's first prayer, if the jury should find the facts therein stated, assumes as law that the forbearance of the appellee to institute proceedings in bankruptcy against Jacob S. Bohn furnished a sufficient legal consideration for the promise of the appellant to pay the debt due by said Bohn to the appellee, notwithstanding the jury should find that on the 10th of November, 1869, the appellee had received from said Bohn an assignment of his book accounts, and a bill of sale of his personal estate to secure a previous indebtedness of said Bohn to the appellee, unless they should find that the appellee, at the time of the assignment and bill of sale knew, or had reasonable cause to believe that Bohn was insolvent, and that the burden of proving such knowledge or reasonable cause to

believe, was on the appellant. His seventh prayer contained the legal proposition, that a promise to forbear proceedings at law is a good consideration to support a promise to pay Bohn's debt to the appellee, whether the proceedings at law could have been successfully prosecuted or not, provided the appellee *bona fide* believed he could have sustained such proceedings and the appellant believed the non-prosecution of the same would be beneficial to him. (The law is well settled that a mere forbearance of "a claim or demand, before suit brought, which is not in fact a legal demand, is not of itself a sufficient consideration to support a promise.") Such is the language of this Court in the case of *Hartle vs. Stahl and Wife*, 27 *Md.*, 172, quoting from the case of *Stoddard vs. Mix*, 14 *Conn.*, 22. The same principle was also decided in *Jones vs. Ashburnham*, 4 *East*, 546, and *Wade vs. Simeon*, 52 *Eng. C. L. Rep.*, 563, 564, and *Busby vs. Conoway*, 8 *Md.*, 62.

The same principle was laid down in this case when formerly before this Court, and is the law of this case.

At the time that the appellant is alleged to have made the promise to pay Bohn's debt to the appellee, had the latter the legal right to institute proceedings in bankruptcy? Clearly not, if he had received from Bohn the assignment and bill of sale with knowledge or reasonable cause to believe that Bohn was then insolvent. The Bankrupt Act prohibited any one from instituting proceedings in bankruptcy, who did not hold a claim provable in bankruptcy. There was error therefore in granting the appellee's seventh prayer, under which an instruction was granted that a promise to forbear proceeding at law was a good consideration to support the promise to pay the debt, as alleged in the *narr.*, if the jury should find that the plaintiff *believed* he could have sustained the proceedings in bankruptcy against Bohn, and the defendant *believed* that forbearance to proceed would be advantageous and beneficial to him.

The 35th section of the Bankrupt Act forbids any sale, transfer, or assignment by a person, who is insolvent, or in contemplation of insolvency, of any part of his property with a view to prevent his property from coming to his assignee in bankruptcy, or to prevent the same from being distributed under said Act, or to defeat the object of, or to hinder or evade the effect of the provisions of the Act, and declares that they shall be void and that the assignee may recover such property. And if such sale, transfer, assignment or conveyance shall be made out of the usual and ordinary course of business of the debtor the fact shall be *prima facie* evidence of fraud.

The proof shows that Bohn and the appellee had been carrying on the milling business in partnership, and that they stopped business on the 1st of November, 1869, and had a settlement, and that on the 10th day of the same month, Bohn assigned all his book accounts and gave a bill of sale of all his personal property to the appellee, and on the same day conveyed all his estate in land to the appellant; thus stripping himself of all the property he had, and leaving himself with but twenty dollars in money, and other debts unpaid and unprovided for. All these transactions were clearly not in the usual and ordinary course of Bohn's business, and therefore were, under the 35th section of the Act, *prima facie* evidence of fraud, of which the appellee was bound to take notice, and the assignment and bill of sale to himself, under the circumstances, were sufficient to put him upon inquiry. Had he made inquiry, as he was bound to do, when these conveyances to him, out of the usual and ordinary course of this debtor's business, were offered, he would readily have ascertained that Bohn had stripped himself of all his property and left other creditors unsatisfied.

The appellee, having received this assignment and bill of sale under such circumstances, has the *onus* cast upon him of proving that they were received by him without

Ecker *vs.* McAllister.

knowledge, or reasonable cause to believe, that Bohn was then insolvent or in contemplation of insolvency. For this reason there was error in granting the appellee's first prayer and in rejecting the appellant's fourth and eighth prayers.

The appellant's fifth, sixth and seventh prayers ought to have been granted for the same reasons that we have above assigned for reversing the rulings of the Circuit Court in granting the appellee's first prayer and in rejecting the fourth and eighth prayers of the appellant.

The amended *narr.* is not contained in the record and as no point is made in the appellant's brief with respect to the rulings of the Court below in granting the appellee's eighth prayer and rejecting the appellant's eleventh prayer, we must presume that said rulings are correct.

As there was error in the rulings of the Circuit Court in refusing to permit the commission, return and evidence as offered in the first exception, to be read to the jury, and in granting the appellee's first and seventh prayers, and in rejecting the appellant's fourth, fifth, sixth, seventh and eighth prayers, the judgment appealed from will be reversed and the cause remanded for a new trial.

<div align="right">

*Judgment reversed, and
new trial awarded.*